**FILED**

JUL 20 2020

**JUDGE SARA L. ELLIS
U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 19 CR 201-14 |
| v. | Judge Sara L. Ellis |
| DESMOND WHITE | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant DESMOND WHITE, and his attorney, MATTHEW CROWL, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The superseding indictment in this case charges defendant with conspiracy to distribute one kilogram or more of heroin and 400 grams or more of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (Count 1), and distribution of heroin and fentanyl, in violation of Title 21, United States Code, Section 841 (Count 15).

3.      Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

1

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the superseding indictment: Count Fifteen, which charges defendant with knowingly and intentionally distributing a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a mixture and substance containing a detectable amount of fentanyl, (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]      propanamide),      a      Schedule      II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count Fifteen of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about September 25, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, DESMOND WHITE did knowingly and intentionally distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of fentanyl (N-

2

phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

Specifically, WHITE acknowledges that on September 25, 2017, an undercover officer (the "UC") called a telephone line operated by Michael Robinson and others, and ordered $300 worth of narcotics. During the telephone call, the operator and the UC agreed to meet at West Van Buren Street and South Paulina Street in Chicago to complete the transaction. Later that day, Tyrell Kelly and WHITE met the UC at the agreed meeting location. The UC approached a white Pontiac in which Kelly was driving and WHITE was a passenger. The UC stated, "This is 300," and handed WHITE $300. In exchange, WHITE distributed three bundles of narcotics to the UC. The UC then asked, "Hey, you think I could get a couple, a couple extra? I got shorted last time." Kelly then distributed two additional Ziploc bags to the UC. In total, WHITE and Kelly distributed 32 Ziploc bags, which contained heroin and fentanyl.

7.     It is the government's position that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct constitutes relevant conduct under Guideline § 1B1.3:

In September 2017, Michael Robinson and others took orders to purchase narcotics from various individuals over the telephone. After Robinson agreed to sell these narcotics, including heroin and fentanyl-laced heroin, WHITE and others agreed to, and did, deliver the narcotics to their wholesale and retail customers in Chicago, Illinois. WHITE and others distributed bundles of narcotics, most of which

contained fentanyl, for $100 per bundle. Each bundle or pack contained, on average, approximately 2.2 grams of narcotics, and in September 2017 Robinson, WHITE, and others working with them distributed at least 2.4 kilograms of heroin per month, no less than half of which was laced with fentanyl.

The amount of heroin for which WHITE is accountable and which was reasonably foreseeable to him during the conspiracy, in September 2017, is at least 2.4 kilograms of heroin, at least 1.2 kilograms of which also contained fentanyl.

### Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of life imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000. Defendant further understands that the judge also must impose a term of supervised release of at least three years, and up to any number of years, including life.

b.      Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### Sentencing Guidelines Calculations

9.      Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

4

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     It is the position of the government that the amount of controlled substances involved in the offense of conviction and relevant conduct for

5

which defendant is at least 1,210.9 grams of heroin and at least 1,205.3 grams of fentanyl. Pursuant to Application Note 8(B) and (D) to Guideline § 2D1.1, when determining the offense level for an offense involving different controlled substances, each drug is to be converted using the Drug Conversion Tables, combined, and then referred to the Drug Quantity Table in Guideline § 2D1.1 to obtain the offense level. Combining the converted drug weight for the fentanyl and heroin for which defendant is accountable equals 4,224.15 kilograms of converted drug weight, which is more than 3,000 kilograms but less than 10,000 kilograms. Therefore, the base offense level is 32, pursuant to Guideline §§ 2D1.1(a)(5) and (c)(4).

   ii.  The defendant disagrees with the government's position and reserves the right to present evidence on the drug quantity.

   iii.  If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

6

iv.     If the Court determines that defendant has fully accepted responsibility within the meaning of Guideline § 3E1.1(a), and that the offense level is 16 or higher prior to the application of any reduction for acceptance of responsibility pursuant to § 3E1.1(a), the government will move for an additional one-level reduction in the offense level pursuant to Guideline § 3E1.1(b) because defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 15 and defendant's criminal history category is VI:

i.     On or about September 29, 2011, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to thirty months' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

ii.     On or about October 15, 2012, defendant was convicted of resisting or obstructing a peace officer in the Circuit Court of Cook County, Illinois, and sentenced to thirty days' imprisonment. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this conviction.

iii.     On or about September 16, 2013, defendant was convicted of possession of a narcotic in the Circuit Court of Cook County, Illinois, and sentenced to three years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

iv.     On or about April 16, 2015, defendant was convicted of possession with intent to distribute narcotics in the Circuit Court of Cook County, Illinois, and sentenced to five years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

v.     On or about April 18, 2019, defendant was convicted of possession of a controlled substance in the Circuit Court of Cook County, Illinois, and sentenced to two years' imprisonment. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this conviction.

vi.     Defendant committed the instant offense while under a criminal justice sentence, namely, a term of supervised release imposed after the conviction discussed above in Paragraphs 9(c)(iv). Pursuant to Guideline § 4A1.1(d), defendant receives two additional criminal history points.

d.     **Anticipated Advisory Sentencing Guidelines Range**. Therefore, it is the government's position that, based on the facts now known to the government, the anticipated offense level is 29 which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory sentencing guidelines range of 151 to 188 months' imprisonment, in addition to any

8

supervised release and fine the Court may impose. It is the defendant's position that the anticipated offense level is 10, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory sentencing guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the

9

Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

12.     Each party is free to recommend whatever sentence it deems appropriate.

13.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14.     The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $300 as compensation for government funds that defendant received during the investigation of the case.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

10

16. Before sentence is imposed, the government will move to dismiss the notice of prior conviction relating to defendant filed pursuant to Title 21, United States Code, Section 851.

17. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the superseding indictment, as well as the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 19 CR 201-14.

19. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

20.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately.

12

The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      b.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      c.  **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code,

Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

21.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

22.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at

14

sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

23.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a

15

certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

25.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

27.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this

16

Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 5/19/20

ERIKA CSICSILA    Digitally signed by ERIKA CSICSILA
Date: 2020.07.14 14:54:28 -05'00'

Signed by Erika Csicsila on behalf of
JOHN R. LAUSCH, JR.
United States Attorney

CHRISTINE M. O'NEILL
Assistant U.S. Attorney

DESMOND WHITE
Defendant

MATTHEW CROWL
Attorney for Defendant

18